BYRD *v.* WELCH, Sheriff.

[91 South.  568.  No. 22416.]

ANIMALS.   *Seizure without writ of undipped tick-infested oxen held unauthorized.*

Chapter 221, Laws of 1918 (sections 5506g-5506i, Hem. Supp.), does not authorize seizure, without writ, of undipped tick-infested oxen from the owner while engaged in hauling on the public highway, but only authorizes seizure after notice, while running at large upon the range.

APPEAL from circuit court of Jones county.

Hon. R. S. HALL, Judge.

Suit in replevin by J. M. F. Byrd against W. E. Welch, Sheriff of Jones County, for possession of ten head of oxen. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*W. B. Collins,* for appellant.

Counsel for appellee contended in the lower court that the appellee had the right to take the oxen in question from the appellant and dispossess him thereof by authority conferred on the appellee as sheriff of Jones county, Mississippi, by virtue of the statutes of the state relating to work of Tick Eradication in the state. The contended that by virtue of chapter 221, Laws of 1918, that the appellee had the right to dispossess the appellant of the oxen in question for the purpose of disinfecting the said oxen and ridding them of what is known as Texas Fever Tick, but the appellant contended that there was no violation of the said laws above referred to, and if there was, that the provision of the said statute was not complied with by the appellee or his deputies before taking the oxen in question. This statute is a highly penal statute and this court has repeatedly held that penal statute must be strictly construed and that nothing can be taken by implication or inference. In other words, this statute imposes a forfeiture, and statutes of this nature must be strictly construed, and always in a manner as favorable to the person whose property is to be seized or forfeited as is consistent with a fair principle or interpretation. It is a power granted to the sheriff and must be strictly construed against the officer acting under it and in as favorable manner to the person whose property is taken as is consistent with a fair interpretation of the statute. Penal statutes cannot be extended by construction so as to bring within their provisions cases, not embraced in their plain letter. *Merrill* v. *Mechoir,* 30 Miss. 516; *Johnston* v. *State,* 63 Miss. 228; *Stafford* v.

State, 44 So. 801; *Foote* v. *Vacant,* 34 Miss. 40.   In the case
of *Foote* v. *Vacant, supra,* the court said in deciding wheth-
er or not a person could recover a penalty on the official
bond of a clerk for an alleged failure of duty: "And the
statute provides that it may be recovered by an action of
debt, which cannot be construed to mean an action of
debt on the bond, for the reason that the statute must be
strictly construed and cannot be made to embrace cases
not coming within the letter of the law.   This court b
held in a number of cases, too numerous to mention, in
cases which the forfeiture of property is sought under and
by authority of statutes and in violation of certain penal
statutes, that these statutes must be strictly construed and
that before a forfeiture can be made, or a penalty placed
upon the violator that the case must be brought within the
strict purview of the statute under which the forfeiture
is sought to be made or the penalty inflicted."

Let us read chapter 221 of the Laws of 1918, and see
what is the real meaning of this statute and see if the facts
in this case will bring it within the purview of this statute.
Section 1 of this act provides: "That it shall be unlawful
for any person, firm, or corporation owning or having in
charge any cattle, horses or mules that are infested with
the cattle fever tick, (Margaropus annulatus) to allow such
animals to run at large or to be upon the open range, or
unfenced lands, during such time that such animals are
carrying the cattle tick upon their bodies."

Section 2.    Should any cattle, horses, or mules, which
are carrying the cattle fever tick (*Margaropus Annulatus*),
upon their bodies be found running upon the open range,
commons or unfenced lands, it shall be the duty of any
inspector commissioned by the live stock sanitary board
or any citizen of the county to notify the owner or persons
having control of such animals; and such notices shall
consist of either personal notice to such owner or persons,
or by one publication in a newspaper published in the
county having general circulation therein, or by posting
notice in three public places in the county, one of which

shall be at the county courthouse and if such animals are not removed within five days after such notification, publication or posting said notice, from the open range, commons or unfenced lands to notify the county sheriff forthwith that such tick infested animals are running at large, upon the open range, commons or unfenced places, and it shall be the duty of the inspector to dip or cause such animals to be dipped and thereafter be placed in enclosure and dipped in accordance with the regulations of the live stock sanitary board, and during such period as such animals are so confined, they shall be in custody of the county sheriff, who may collect reasonable fees for the feed, care and handling of such animals and any expenses so incurred in handling, dipping, confining or feeding or pasturing of such animals shall be a lien against them to be paid by the owner or owners of such animals before the same are released by the sheriff, and if such animals which have been so taken up and placed in the custody of the sheriff are not identified and claimed by the owner within a period of thirty days, such animals may be sold by the sheriff as provided by statutory law for estray animals.

Section 3. That any person, officer, firm or corporation violating or failing to comply with any of the provisions of this act shall be guilty of misdemeanor and upon conviction thereof in a court of competent jurisdiction shall be fined not less than five dollars, nor more than one hundred dollars, or imprisonment in the county jail not more than three months or both such fine and imprisonment.

It will be noted from the reading of this statute that before a sheriff has a right under or by virtue of the authority conferred in this statute to dispossess anyone of his cattle or to take them into his possession for the purpose of dipping them, they must: First, be found running at large on the open range or unfenced lands; second, he or some one else must give the owner of said cattle a five day's notice before the sheriff takes them into his possession, that they are infested with cattle tick; third, such

owners must fail to remove them within the five days from the time of receiving the notice.

*W. S. Welch* and *Deavours & Hilbun,* for the defendant.

It must be evident to the court that replevin if maintainable at all in this case could only be determined, when instituted on August 15, 1921, against Holladay, the stable keeper or Dr. Moline, the cattle tick inspector; but in no event under the statement of facts disclosed by the record, could it be maintained against the appellee W. E. Welch, the sheriff of the county. If appellant has brought his replevin suit against the wrong party of course he cannot recover.

A copy of the rules and regulations of the live stock sanitary board is filed as a part of the record in this case. An examination of these rules and regulations, in connection with the testimony in this case, will show how flagrantly the appellant violated those rules and regulations. The costs incurred for the keep of the oxen while in Holladay's stable were incurred because of the stubbornness of the appellant. The learned circuit judge was evidently correct, when he held that the appellant must pay this bill for the keep of his oxen.

We submit on the whole record it clearly appears that the granting of the peremptory instruction for the defendant was correct and that the case ought to be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is a suit in replevin instituted by the appellant, Byrd, against appellee, Welch, sheriff of Jones county, to recover the possession of ten head of oxen seized and held by the sheriff for failure of the owner to dip the oxen under the Tick Eradication Law (chapter 221, Laws of 1918 [sections 5506g-5506i, Hem. Supp.]). Upon the trial of the case a peremptory instruction to find for defendant, Welch, was granted by the court, and the plaintiff appeals.

The facts of the case necessary to be stated so as to understand the decision are as follows: It appears that Byrd, the owner of the ten oxen, had permitted them to run at large upon the open range in the northeast part of Jones county, near the county line; that the oxen were infested with cattle fever ticks, and had not been dipped as required by law; there being a dispute in the testimony, however, as to whether or not Byrd had dipped the cattle in a nearby vat in the adjoining county, and had a range permit from the proper authorities of that county. It is also in dispute as to whether Byrd had been legally notified to dip the oxen before they were seized by the sheriff.

At all events, on July 28, 1921, Byrd was using the ten head of oxen yoked to his logging wagon, hauling logs from his place to another point in the county, and while thus traveling upon the public road, the log wagon loaded with logs being in charge of his driver, Blackledge, two deputies of appellee, Sheriff Welch, seized the oxen, unyoked them from the wagon, leaving it with its contents on the side of the road, and drove the oxen to Laurel, where the sheriff impounded them in a stable and dipped them the following day. The oxen remained in charge of the sheriff for about fifteen days, entailing an expense of eighty-four dollars for food and care. The appellant, Byrd, demanded the return for his oxen, but this was refused unless Byrd would pay the expense incurred by the sheriff in keeping the cattle after the seizure. Finally Byrd sued out replevin for the oxen, and the court peremptorily denied his right to the possession of them.

The seizure of the oxen by the sheriff's deputies was without any writ of seizure, but was done on the ground that the oxen were infested with cattle fever ticks, which was a fact at the time they were unyoked and taken from the wagon. There appears to have been no process issued authorizing the seizure, and only verbal directions were given the two deputies to take the oxen because they were infested with ticks, and had been running at large without

being dipped as required by law.  The act under which
the seizure was made reads as follows:

"An Act to Prohibit Tick-Infested Cattle, Horses and
Mules from Running at Large on the Open Range,
Commons and Unfenced Land, and to Provide for
Their Removal from the Open Range, Commons, or
Unfenced Lands and to Provide for the Expense In-
curred in the Handling and Care of Such Animals, and
to Prescribe Penalties for Violations of the Provisions
of This Act.

"Section 1.  Be is enacted by the legislature of the
state of Mississippi, that it shall be unlawful for any per-
son, firm, or corporation owning or having in charge any
cattle, horses or mules that are infested with the cattle
fever tick (*margaropus annulatus*) to allow such animals
to run at large or to be upon the open range, unfenced
lands, during such time that such animals are carrying
the said cattle tick upon their bodies.

"Sec. 2. Should any cattle, horses or mules, which are
carrying the cattle fever tick (*margaropus annulatus*), up-
on their bodies be found running at large upon the open
range, commons or unfenced lands, it shall be the duty of
any inspector commissioned by the live stock sanitary
board or any citizen of the county to notify the owner or
person having control of such animals; and such notice
shall consist of either personal notice to such owner or
person, or by one publication in a newspaper published in
the county having general circulation therein or by posting
notice in three public places in the county, one of which
shall be at the county courthouse, and if such animals are
not removed within five days after such notification, pub-
lication or posting said notice, from the open range, com-
mons or unfenced lands to notify the county sheriff forth-
with that such tick infested animals are running at large,
upon the open range, commons or unfenced place, and it
shall be the duty of the inspector to dip or cause such ani-
mals to be dipped and thereafter be placed in an inclosure
and dipped in accordance with the regulations of the live

stick sanitary board, and during such period as such animals are so confined, they shall be in the custody of the county sheriff, who may collect reasonable fees for the feed, care and handling of such animals, and any expenses so incurred in handling, dipping, confining or feeding or pasturing of such animals shall be a lien against them to be paid by the owner or owners of such animals before the same are released by the sheriff and if such animals which have been so taken up and placed in the custody of the sheriff are not identified and claimed by the owner within a period of thirty days, such animals may be sold by the sheriff as provided by statutory law for estray animals."

The appellant presents several grounds for reversal, among which is the constitutionality of the law, but we shall notice but one point, the decision of which will end the case, and that is, whether or not the act authorized the seizure of the oxen by the officers without a writ and while being used by the owner in hauling logs upon the public highway.

It will be observed that the terms of the act are somewhat crude and indefinite, but we find no trouble in determining that the act means that, when undipped cattle are "found running at large upon the open range, commons or unfenced lands," and are infested with ticks, they may, after due notice, be taken up and dipped by the proper authority. This being true, it seems clear to us that the seizure in this case was wholly unauthorized, and contrary to law. Therefore the oxen were wrongfully taken from the possession of the appellant, and it was the duty of of the appellee, Welch, to have returned them to the owner.

In the enactment and enforcement of tick eradication laws the property rights of the individual should not be disregarded nor invaded without due process of law. Every citizen of the land is entitled to the protection afforded by due process. The legislature never intended to authorize the seizure, without lawful process, of work stock from the owner engaged in hauling upon the public roads. The

act may mean that some right is given to seize the tick-infested stock while running at large upon the range, but certainly not when being used by the owner in drawing his wagon upon the public highway.

A contrary construction of the law would lead to results never contemplated by the legislature. To hold that the owner of a pair of mules who is transporting his family to town in a wagon can be stopped on the public road, his mules taken from the wagon, and he and his family left to walk, merely because a few ticks are found upon the animals, would be destructive of individual property rights long guaranteed by the Constitution.

That the Tick Eradication Law, and all other laws enacted by the legislature, should be enforced we quite agree, but the constitutional rights of the individual must be preserved, in that the method of enforcement should be reasonable and within the bounds or the organic law.

The lower court erred in granting a peremptory instruction for the appellee for the reason that the appellant, plaintiff below, should have been granted a peremptory instruction to find for him; therefore the judgment of the lower court is reversed, and the case remanded.

*Reversed and remanded.*